MAGER, Judge
(dissenting) :
I must respectfully dissent from the opinion of the majority. Although recognizing that an executive order of suspension need not be as specific and as definite as the allegations of a criminal informa *36 tion, the majority has nevertheless applied a test of specificity and definiteness to such order.
The judicial inquiry into an executive order of suspension is limited to a determination of the existence of “jurisdictional facts, i. e., the matters and things stated in the order of suspension on which the executive grounds his cause of removal, may be considered by the courts to the extent of determining whether the facts stated have some reasonable relation to a constitutional ground of suspension. . . .”. State ex rel. Hardee v. Allen, supra. In State ex rel. Hardie v. Coleman, supra, the Supreme Court had earlier observed 155 So. at page 133:
“ . . . . that if the order names one or more of the grounds embraced in the Constitution and clothes or supports it with alleged facts sufficient to constitute the grounds or cause of suspension, it is sufficient. .
“. . . Being an executive order subject to review by the Senate, if, on the whole, it contains allegations that bear some reasonable relation to the charge made against the officer, it will be adjudged as sufficient. . . . ”
Paragraphs E, F and G of the Governor’s Executive Order, as set forth in the majority opinion, clearly and unmistakably set forth facts which “have some reasonable relation to a constitutional ground of suspension”, i. e., misfeasance, neglect of duty, drunkenness and incompetence. See State ex rel. Hardie v. Coleman, supra.
In my humble opinion the majority has confused “jurisdictional facts”, heretofore denominated in State ex rel. Hardie v. Coleman and State ex rel. Hardee v. Allen, supra, with “specific and definite facts.” The specificity or definiteness as urged by the majority is not required by the holdings in Coleman and Allen. As these cases have observed, if the executive order “on the whole . . . contains allegations that bear some reasonable relation to the charge made against the officer, it will be adjudged as sufficient”. The executive order in the case sub judice satisfies this requirement.
These observations should not be interpreted as suggesting that a public officer can be suspended and removed without observance of fundamental requirements of due process including notice and a fair hearing. These requirements, however, are matters quite separate and apart from the determination of whether an order of suspension contains sufficient -“jurisdictional facts”. The executive order in the case sub judice contains supporting allegations of fact which put the suspended official on notice of the grounds of suspension and the basis therefor. (Paragraphs E, F and G, supra.)
If some of the factual allegations are not sufficiently specific as to time date and place, the suspended official can seek greater specificity through the machinery of the Senate Select Committee which is authorized to request the Governor “to file a statement of further facts and circumstances supporting the suspension order.” See Suspension and Removal of Public Officers, 23 U. of Fla.L.Rev., (1970-71), 635-671, footnote 12, at p. 638.[1] It is my opinion from years of personal experience and contacts with the functioning of the Senate Select Committees that such committees will discharge their duties and responsibilities in a manner consistent with the recognition and preservation of the rights of suspended public officials.[2] See, in particular, F.S. Section 112.47, F.S.A. Cf. special concurring opinion of Justice *37 Terrell, State v. Sullivan, Fla.1951, 52 So. 2d 422. As stated in 23 U. of Fla.L.Rev., supra, at p. 648:
“ . . . there can be little serious doubt today that if an officer is removed from office without observance of minimum requirements of. due process, or if any of his other constitutional rights are violated, he will be afforded relief in either federal or Florida courts.”
The majority opinion, which appears to be premised solely upon the lack of specificity and definiteness in the executive order, demonstrates a well-intentioned concern for the proposition that the public official be afforded “at least enough specificity as to fairly apprise (him) of the alleged acts against which he must defend himself”. Although, in my view, the executive order is sufficiently specific, even assuming that it does not meet the test of specificity, it would be presumptuous of this court to assume in advance that the Senate Select Committee will not undertake to secure from the Governor “a statement of further facts and circumstances supporting the suspension order”. An order of suspension containing “jurisdictional facts”, as defined, should not be set aside because the allegations are couched in general language where the suspended official has not shown that he has resorted to and been denied “a statement of further facts and circumstances supporting the suspension order”. Much like an information in a criminal proceeding which is subject to a bill of particulars so, too, is the order of suspension subject to a “statement of further facts . . . ”.
The line of demarcation between the enumeration of “jurisdictional facts” sufficient to support an executive order and the vagueness or indefiniteness of allegations may seem gossamer but is nevertheless substantial insofar as it relates to the sufficiency vel non of an executive order. Chief Justice Whitfield pointed out in State ex rel. Hardee v. Allen, supra, “All reasonable intendments will be indulged in to support the sufficiency of the challenged acts of the Governor and the Executive”. The order of suspension in the case sub judice, while not a model of specificity, nonetheless satisfies the requirements in State ex rel. Hardee v. Allen, and State ex rel. Hardie v. Coleman, supra.[3]
Therefore, I would reverse the peremptory writ of quo warranto and order for judgment of ouster with the following observations appearing in 23 U. of Fla.L. Rev., at pp. 635, 636 and 637:
“The executive power of stispension serves a vital public need. It provides an effective remedy, unique among the states, for the chronic ill of democratic government■ — the entrenchment 'of corruption, neglect of duty, and other evils in public office. By virtue of the executive power of suspension, minimum standards of public administration are established and may be enforced throughout Florida.
*!» «K 'k H»
“ . . . Although the Governor has exclusive authority to initiate suspensions, the senate has the responsibility to make final dispositions of them. The senate is entrusted with the great duty and responsibility to ensure that the awesome executive power of suspension is used to achieve its constitutionally intended public purposes and to see that no officer is removed for grounds other than those provided by law.”

. This law review article, which is ably written and well documented, contains one of the most comprehensive treatments of the suspension process in Florida.

. The Senate Select Committee has in the past when requested and sua sponte sought to provide the suspended officer with the necessary specificity when such was deemed lacking and was not hesitant to reinstate a suspended official if such specificity was not forthcoming from the Governor.

. The foregoing observations relate solely to the question of the legal sufficiency of the Governor’s executive order of suspension and should not be interpreted as passing upon the qualifications of the suspended official or any other aspect of the suspension order.